**Merriweather v. Philadelphia Newspapers Inc.**

*Geoffrey Johnson,* for plaintiff.
*Robert Heim,* for defendants.

FEUDALE, CASSIMATIS, ENDY, *SJ.,* May 29, 2002—Defendants filed post-trial motions from the entry of a verdict in favor of plaintiff, Ronald B. Merriweather, and against defendant, Philadelphia Newspapers Inc. et al. (PNI) in this defamation action. The jury awarded Judge Ronald B. Merriweather $100,000 in compensatory damages and $400,000 in punitive damages. Record argument before a specially convened three-judge en banc panel was conducted on June 11, 2001.

## I. HISTORY OF THE CASE

We incorporate by reference and attach the explanatory opinion by Feudale, J. which was docketed on October 10, 2000. [Not published here.]

Such sets forth the newspaper article that was the basis for this defamation action, as well as the basis for the trial. Defendants, in effect, assert that the case that was tried by the plaintiff and the trial court's charge to the jury, was based on theory that had been disallowed or rejected by the Superior Court.[1]

In the first appeal, the presiding judge, (Hon. James Buckingham) granted defendants' motion for summary judgment. He found that as a matter of law PNI did not abuse the fair report qualified privilege as to the article in question.

The Superior Court upon review characterized and framed the issue, as set forth by appellant Merriweather, and stated the following:

"Judge Merriweather contends that the article which appellees published misconstrues the federal indictment and abuses the qualified privilege because, (1) the headline and article taken together falsely imply that Judge Merriweather fixed court reporter Massey's trial or, (2) the article implies that the federal authorities accused, yet did not charge Judge Merriweather of fixing Massey's trial. Appellant's briefs at 7. We shall address both of Judge Merriweather's contentions. We can summarily dismiss Judge Merriweather's claim that the article implies that federal authorities accused, but did not charge Judge Merriweather of fixing Massey's trial. The article clearly states that Judge Merriweather was *not accused of* any wrongdoing.

---

1. *Ronald B. Merriweather v. Philadelphia Newspaper Inc.*, before: Wieand, Tamilia and Cercone, JJ., filed October 23, 1992, and *Ronald B. Merriweather v. Philadelphia Newspaper Inc.*, before Cavanaugh, Hudock and Jameson, JJ., filed September 11, 1996.

"However, we find merit in Judge Merriweather's second argument that the title of the article, 'FEDS: Court Reporter's Pot Trial Fixed,' coupled with the text of the article implies that he was instrumental in fixing Massey's trial. At this point, it is important to compare the federal indictment against Judge Harris with the article written by the *Philadelphia Daily News*. The indictment alleges that the federal defendants, including Judge Harris and attorney Romaine Phillips, unlawfully conspired to participate in the conduct and affairs of the Court of Common Pleas of Philadelphia County through multiple acts of bribery and extortion. Indictment, paragraph 3, 4. The indictment then charged that the defendants carried out the conspiracy by seeking to influence the outcome of judicial proceedings. This was accomplished through various means, including the steering of cases involving criminal defendants to certain attorneys and judges in the court system to obtain favorable results. Indictment, paragraphs 5, 6. It was further alleged that the defendants acted overtly by seeking to fix the case of *Commonwealth v. Massey*, M.C. 8604-0570. Indictment, paragraph 38. The overt act purportedly occurred when Judge Harris told an attorney that Massey inquired as to whether the case "was fixed yet," and when attorney Romaine Phillips discussed the need for a continuance in Massey's case, which Harris granted. Indictment, paragraphs 39, 41.

"The indictment never mentioned Judge Merriweather. The article, however, did mention Judge Merriweather's handling of Massey's case. Specifically, the title of the article indicates that the federal authorities alleged that Massey's trial was fixed. Moreover, the article states that 'Judge Kenneth Harris—in apparently taped conversations—suggested that a fix, not a doubt, would be be-

hind her acquittal on drug charges by Municipal Judge Ronald A. Merriweather.' Thus, the article focuses on the outcome of the trial, as well as the actions of the federal defendants. By suggesting that the trial and the acquittal, matters which were under the sole control of Judge Merriweather, were fixed, we find that the article can reasonably be interpreted to implicate Judge Merriweather in the federal conspiracy. Thus, we find that a reasonable person could conclude that the article implied that Judge Merriweather had a role in fixing the Massey case. Although the article states that Judge Merriweather was accused of no wrongdoing, the article can be construed to imply that Judge Merriweather was involved in the conspiracy. We therefore find that the trial court erred in holding, as a matter of law, that the article was a fair and accurate report of the federal indictment. A question of fact concerning this point remains and must be disposed of by the jury.

"Order reversed. The case is remanded for proceedings consistent with this memorandum. Jurisdiction is relinquished.

"Wieand, J. Dissents."

In the second appeal to the Superior Court involving the issue of actual malice, the court reviewed its earlier 1992 panel decision and stated:

"On appeal, appellant argued that the trial court erred in granting summary judgment by finding that, as a matter of law, appellees did not abuse the qualified privilege to report on the federal indictment. A panel of this court agreed. . . . The panel reversed the trial court's order and remanded the matter for further proceedings. Appellees filed a petition for allocatur with our Supreme Court.

Although the petition was granted and the appeal was briefed and argued, the Supreme Court entered an order dismissing the appeal as having been improvidently granted.

On March 8, 1995, appellees filed another motion for summary judgment, this time claiming that, as a matter of law, appellant could not prove actual malice. After appellant filed a response, the trial court heard arguments and, by the order dated August 18, 1995, granted appellees' motion for summary judgment."

Appellant phrases the issue before us as follows:

"(1) Whether the trial court erred in granting summary judgment to (appellees) on the issue of actual malice where (appellees) published a false accusation that (appellant), a judge, 'fixed' the trial of a case, where there was absolutely no factual basis for the accusation in the only source materials admittedly relied upon by the (appellee) where the source material actually contradicted the accusation. . . ." Appellant's brief at p.3.

After discussing, reviewing, and reiterating its earlier panel decision, the Superior Court stated:

"Although we limited our review to whether the article was a fair and accurate report of the federal indictment, in the present appeal we find that our previous analysis of the evidence would also support a fact-finder's determination that appellees published the article with actual malice. It is clear that the headline and content of the article when coupled together, do not reflect the contents of the *federal indictment* upon which it was based. (emphasis added) Now we must decide whether appellant has alleged sufficient facts to raise a material issue regarding whether appellees published the article with

knowledge of or reckless disregard for the truth. In this regard, we find that the implications of appellant's involvement in the federal conspiracy are obvious, and *their lack of any basis within the actual federal indictment are equally obvious.* (emphasis added) Although the article expressly relates a single line to the effect that appellant was not accused of any wrong doing we find that this does not negate the implication of involvement which permeated the article."

So, to reiterate, defendants' argument is that the plaintiff pled, claimed, and twice argued to the Superior Court, inter alia, two factual/legal defamation causes of action:

"(1) That the article implied that the federal authorities accused, yet did not charge, Judge Merriweather of fixing Massey's trial. That contention, according to the defendant, was both summarily dismissed and reiterated in the two Superior Court opinions. With that contention we concur.

"(2) The second claim was that the headline and the article taken together falsely implied or could be construed to imply when coupled or read in context by a reasonable person that Judge Merriweather 'fixed' or was instrumental in fixing or 'had a role in fixing court reporter Massey's trial.' "

In summary, after reflection and careful review of the averments/arguments plaintiff/appellant made before the Superior Court, and the Superior Court's holdings, we believe both panels clearly and unequivocally stated:

"(1) There is no cause of action that the article implies that federal authorities accused but did not charge Judge Merriweather of fixing Massey's trial since the article clearly stated that Judge Merriweather was *not accused of wrongdoing.* (emphasis in original)

"(2) Both panels addressed the literal accuracy of two separate statements: (1) 'Feds: Court Reporter's Pot Trial Fixed' and (2) 'Neither Judge Merriweather or Massey is accused of any wrongdoing.' "

Again, a review of the Superior Court opinions reflected that neither statement appeared in dispute. For example, as to indicted defendants Judge Harris and attorney Romaine Phillips, it was alleged they acted overtly in seeking to fix the case, *Commonwealth v. Massey,* M.C. 8604-0570. As to Judge Merriweather, it was equally clear that notwithstanding the fact that the article clearly reflected that he was not accused of any wrongdoing, it was also clear that the article did not state or imply as a fact that the Harris indictment accused Judge Merriweather of fixing the trial of Loretta Massey.

With the issues thus framed, and in consideration of the "holdings of the Superior Court," the case proceeded to trial. It is PNI's contention that during the course of the trial, plaintiff argued "(1) against the introduction of certain evidence, (2) opposed the defendant's motion for a nonsuit at the conclusion of the plaintiff's case, and (3) requested a charge to the jury," all of which contradicted plaintiff's one remaining claim that was allowed by the Superior Court and which was clearly contrary to the Superior Court's holdings.

In consideration and reliance on the Superior Court's holding as to plaintiff's remaining cause of action, the defendant listed and attempted to call Richard Barrett, the assistant district attorney who prosecuted the Massey case. In their offer of proof PNI indicated Barrett would have testified about the irregularities in, and concerns he had about, Judge Merriweather's handling of the Massey

case. Defendants argue that this evidence was directed to the truth of any implication that plaintiff was involved in a conspiracy to fix the Massey trial. Plaintiffs argued that the events at the trial of the case of *Commonwealth v. Massey* were not relevant to any issue and that there was nothing that Mr. Barrett could testify to that had any bearing on what Mr. Maryniak wrote. Plaintiff maintained unequivocally that Barrett's testimony was not relevant to any element of his claim, including "the truth or veracity of what is asserted in the article." Based on plaintiff's assertions, the court excluded Barrett's testimony except for impeachment on a limited issue.[2]

It is the position of PNI that plaintiff and his counsel in contravention to the two prior Superior Court decisions engaged in an open and unequivocal strategic decision to craft the theory of defamation in a manner such as to avoid the issue of Judge Merriweather's actual role in the Massey case. It was the position of the defendant that the federal prosecutors ultimately concluded that Harris had placed the Massey case "before a specific judge for (the) specific purpose of an acquittal, which in fact occurred." Defendant referenced government's trial memorandum, in *United States v. Harris* (cited in 1992 trial court opinion at 5). Again, according to PNI by adopting the theory that plaintiff actually tried, he was able to prevent litigating his role in the acquittal.

Next, on February 1, 2001, when the defendant moved for a nonsuit, counsel for plaintiff argued inter alia "I think the allegation that a judge was accused of fixing a case by the federal government or implicated in a case

---

2. The trial court will address said ruling in a separate opinion since it falls outside the ambit of the issues framed before the en banc panel.

fix by the federal government is certainly defamatory." (N.T. 2/1/00 at 31 L. 7-10.)

Finally, and in defendant's view, most persuasively, is the court's charge to the jury that they would have to find "that the average newspaper reader, considering the article as a whole, understood the article to state or imply as a fact that the Harris indictment accused Judge Merriweather of fixing the trial of Loretta Massey.[3]

In consideration of the aforegoing, we turn to an analysis of the applicable law regarding entry of judgment n.o.v. It is axiomatic that "[t]here are two basis upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, . . . and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." *Moure v. Raeuchle,* 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992). (citations omitted) To uphold judgment n.o.v. on the first basis, the court must review the record and conclude "that even with all [the] factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second [we] review the evidentiary record and [con-

---

3. See trial transcript dated February 3, 2000, page 30, lines 5-24, 31 lines 8-25, 32 lines 1-25, 33 lines 1-4 and 34 lines 6-18.

Plaintiff requested a jury instruction which explained what plaintiff needed to prove regarding the defamatory meaning of the article: "the average newspaper reader, considering the article as a whole, understood the article to state or imply as a fact *that the Harris indictment accused Judge Merriweather of fixing the trial* of Loretta Massey."

Also, prior to the charge conference, counsel conferred to determine the points that could be agreed upon, either as proposed or with some modification, and the points on which the court would have to rule. Defendants' revised jury instruction no. 9 was modified by plaintiff and then submitted by agreement of counsel.

clude] that the evidence was such that a verdict for the movant was beyond peradventure." *Id.*

When the courts review a motion for judgment n.o.v., they must consider the evidence in the light most favorable to the verdict winner, who must receive "the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Id.* (citing *Broxie v. Household Finance Co.,* 472 Pa. 373, 380, 372 A.2d 741, 745 (1977)). Any doubts must be resolved in favor of the verdict winner, and judgment n.o.v. should only be entered in a clear case. *Id.* Finally "a judge's appraisement of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations." *Id.,* citing *Brown v. Shirks Motor Express,* 393 Pa. 367, 375, 143 A.2d 374, 379 (1958).

Clearly, the plaintiff chose to proceed to trial on a claim that the record on post-trial relief reflects was contrary to the law of the case, as rendered and reiterated by two Superior Court panels. Next plaintiff's own testimony reflects his reliance on the theory/claim that was disallowed by the Superior Court. Plaintiff was asked on cross-examination the following questions:

"Q. When you read the article, the headlines, the article, was it your sense, your understanding that the article was saying that the federal government, the Feds, in their indictment was saying that Judge Merriweather fixed the pot trial?

"A. Yes.

"Q. And that was basically. . . the reason you were upset?

"A. Yes.

"Q. So you knew that the federal indictment had not charged you with fixing the pot trial, you thought this article said as much that the federal government had charged you with or accused you of fixing the pot trial, and it was that reading of it that outraged you.

"A. That's a lie and that's what upset me." (N.T. 1/28/00 at 178-79.)

Finally, defendant points to plaintiff's closing argument wherein plaintiff argued that "what this article says is, or what this article tries to tell the readers of the *Daily News* is, that the federal government has stated, accused or otherwise implicated Judge Merriweather of fixing the trial in *Commonwealth v. Massey.*" (N.T. 2/2/00 at 15.)

While this court cannot speculate on the basis for plaintiff abandoning his claim that the article in question taken in the context of the caption and the text, defamed him by implication, he apparently made a clear and unequivocal choice to proceed in such a fashion. Of course, it is defendant's position that by adopting the theory (defendant characterizes it as "carefully crafting his theory of defamation") that both plaintiff's counsel argued, presented and strategized, and plaintiff himself testified to, they were able to avoid litigating the actual role plaintiff allegedly played in the acquittal of Massey.

Plaintiff contends that defendants are not entitled to judgment n.o.v. for three reasons. First, plaintiff argues that the relevant language of the *1992 Superior Court opinion* was *dicta.* Second, plaintiff claims that the decision was implicitly overruled by *MacElree v. Philadelphia Newspapers Inc.,* 544 Pa. 117, 674 A.2d 1050 (1996). Third, plaintiff maintains that he presented evidence supporting other alleged defamatory implications on which the jury could have based its verdict.

*Dicta*

In the first appeal in this case, plaintiff claimed that a jury could conclude that the article abused the fair report privilege[4] because it carried two implications allegedly not supported by the official proceedings reported on: (1) that plaintiff was involved in the conspiracy to fix the *Massey* case and (2) that the federal authorities had accused plaintiff of participating in the conspiracy. The Superior Court rejected the latter argument because it concluded that the article cannot be read to carry the alleged defamatory implication; as the court noted, the article explicitly stated that plaintiff had not been accused of wrongdoing. This ruling was *essential* to the Superior Court's holding that plaintiff could overcome the fair report privilege in this case only if the jury concluded that the article implied a direct accusation that plaintiff was involved in the conspiracy.

The definition of dicta is well-settled. "Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand are obiter dicta, and lack the force of adjudication." *Giffear v. Johns-Manville Corp.,* 429 Pa. Super. 327, 334 n.6, 632 A.2d 880, 884 n.6 (1993) (quoting Black's Law Dictionary 409 (5th ed. 1979)), *aff'd,* 543 Pa. 664, 674 A.2d 232 (1996). Because determining the meaning that the jury could reasonably ascribe to the article was essential to determining the application of the fair report privilege in this case, the portion of the *1992 Superior Court opinion* dismissing plaintiff's claim at trial was not dicta.

---

4. The fair report privilege is a general rule that a qualified privilege extends to reports of certain public proceedings if the report is accurate and a complete or fair abridgement of the occurrence reported.

## MacElree Did Not Implicitly Overrule
## The 1992 Superior Court Opinion

Next, plaintiff maintains that *MacElree v. Philadelphia Newspapers Inc.,* 544 Pa. 117, 674 A.2d 1050 (1996), effectively revived his claim that the article may reasonably be read to imply that the indictment accused him of wrongdoing and, thereby, implicitly overruled the *1992 Superior Court opinion. MacElree* has no bearing on this case and does not mean what plaintiff says.

Plaintiff asserts that, notwithstanding the fact that the article expressly states that Judge Merriweather is not "accused of wrongdoing," the reader, based on the headline and second paragraph of the article, might have drawn the opposite conclusion that the indictment did accuse him of wrongdoing. Again, this is the claim that the Superior Court rejected. The *1992 Superior Court opinion* held that no reader could reasonably have concluded that the indictment accused Judge Merriweather of wrongdoing because this implication was *expressly* refuted in the article. Plaintiff argues that *MacElree* rejects this analysis and maintains that *MacElree* holds that a reader may draw a defamatory conclusion from an isolated portion of an article even if that conclusion is explicitly negated by other language in the article.

Plaintiff's reading of *MacElree* is wrong. *MacElree* does not stand for the proposition for which plaintiff cites it and does not call into question in any way the holding of the *1992 Superior Court opinion.* The publication in suit in *MacElree* reported on a brawl at Lincoln University, a historically black college in rural Chester County, between students and outsiders. The article, entitled "What goes on at Lincoln U?" also discusses the Lincoln administration's reluctance to acknowledge the role

that students played in the melee. Of the 24 paragraphs in the column, two refer to James MacElree, then the district attorney of Chester County. Those two paragraphs reported that, in response to remarks by MacElree that one of the outsiders had been stabbed, Lincoln's lawyer accused MacElree of "electioneering—'the David Duke of Chester County running for office by attacking Lincoln.' "

MacElree sued, claiming that the article misquoted Lincoln's lawyer and thereby defamed him. The Superior Court affirmed dismissal on the ground that "[t]he article was not about MacElree; to the extent that the reader would be left with any impression of MacElree at all, it would be a positive impression when contrasted with the dissembling university officials." *MacElree v. Philadelphia Newspapers Inc.,* 437 Pa. Super. 598, 602, 650 A.2d 1068, 1070 (1994). The Supreme Court reversed, holding that "[S]pecific language may be defamatory even though the subject of the defamatory language is not the focus of the article. Moreover, a publication may be sympathetic towards its subject overall while particular portions have a defamatory meaning." 544 Pa. at 125, 674 A.2d at 1054.

Thus, *MacElree* addressed the case where a plaintiff takes issue with a small portion of an article and the rest of the article has nothing to do with, and does not explain, the language complained of. *That is not the case here.* In this case, the remainder of the article includes a passage which *expressly refutes* the defamatory implication that plaintiff attempts to ascribe to the limited portion of the article about which he is complaining. Unlike the article in *MacElree,* the article in suit here *expressly states* the contrary of what plaintiff claims the headline and second paragraph imply.

The interpretation of *MacElree* that plaintiff urges would put it at odds with the axiom of libel law that to determine whether an article is capable of a defamatory meaning, the court must consider all of the language in the article. *Thomas Merton Center v. Rockwell International Corp.,* 497 Pa. 460, 442 A.2d 213 (1981), demonstrates the rule. In *Thomas Merton Center,* the plaintiff alleged that a newspaper article falsely implied that the plaintiff was an agent of the Soviet government. To support its claim, the plaintiff looked solely to the first paragraph of the article—where the defendant claimed that opponents of the B1 bomber were being funded by the Soviet Union—and the penultimate paragraph of the article—where the plaintiff was identified as an opponent of the B1. Because the remainder of the article demonstrated that the plaintiff was not actively aiding the Soviet Union, the Supreme Court upheld the dismissal of the complaint, explaining that:

"If these two paragraphs of the article constituted the entire story. . . the innuendo urged by [the plaintiff] might be reasonable. However, 'words which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable' Restatement (Second) of Torts, §563, comment d. Thus, *we must consider the full context of the article to determine 'the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.'* " 497 Pa. at 465, 442 A.2d at 216. (emphasis added and citations omitted) Numerous cases have reaffirmed this fundamental principle, both before *MacElree* and after. See *e.g., Baker v. Lafayette Col-*

*lege,* 516 Pa. 291, 296, 532 A.2d 399, 402 (1987) ("the court must view the statements in context"); *Green v. Mizner,* 692 A.2d 169, 172 (Pa. Super. 1997) ("the court must consider the effect of the entire article"); *Livingston v. Murray,* 417 Pa. Super. 202, 209 n.3, 612 A.2d 443, 446 n.3 (1992). (The court "must examine the full context of the communication in which the statements appear to properly determine whether the statements are capable of defamatory meaning"), *appeal denied,* 533 Pa. 601, 617 A.2d 1275 (1992).

*MacElree*—which neither mentions the *1992 Superior Court opinion* nor questions the holding in *Thomas Merton Center* or any Supreme Court precedent—does not purport to change the law, nor does it, and it certainly does not revive the claim that the Superior Court rejected in 1992.

## Other Alleged Defamatory Implications

Plaintiff takes the position that he presented evidence of more than one defamatory meaning to the jury. Specifically, plaintiff contends that there was evidence and argument in support of both of his original theories— that the article implied a direct accusation that he was involved in the conspiracy and that the article implied that the indictment accused him of such—as well as a third theory, "that plaintiff will be charged in the future." Pl.'s post-trial mem. at 8-12. Plaintiff maintains that the jury was free to conclude that the article was defamatory for any of these reasons, thus the verdict should be upheld. This argument lacks merit for several reasons.

From opening to closing the jury was instructed at plaintiff's request on a single theory of defamatory meaning. At the outset, the court instructed prospec-

tive jurors that plaintiff's claim was that the article "falsely stated that *a federal indictment charged* that he had fixed a trial in collaboration with another judge, Judge Kenneth Harris, who had been charged in a federal court indictment with taking money to influence the outcome of cases." N.T. 1/24/00 at 4. (emphasis added) Again, at the close of the case, the sole theory of defamatory meaning on which the jury was instructed was as follows:

"As the first element of his defamation claim, Judge Merriweather must prove by a preponderance of the evidence that the article was understood by the average, reasonable person who read the article to have the meaning Judge Merriweather claims it had.

"This means that Judge Merriweather must prove that the average newspaper reader considering the article as a whole understood the article to state or imply as a fact that the *Harris indictment accused* Judge Merriweather of fixing the trial of Loretta Massey.

"You must decide whether the average reader understood the article and headline when read in context to imply that the *Harris indictment accused* Judge Merriweather of fixing the trial of Loretta Massey." N.T. 2/3/00 at 31-32. (emphasis added)

These instructions were given with plaintiff's specific approval and plaintiff did not request any instructions on his supposed alternative theories of defamation.

Plaintiff cannot both request that the jury be instructed on a single theory of defamation and then speculate afterwards that the jury could have returned its verdict on other theories. A jury is presumed to have followed the instructions the court gives it. See *e.g., Commonwealth v. Farmer,* 758 A.2d 173, 178 (Pa. Super. 2000); *Hutchi-*

*son ex rel. Hutchison v. Luddy,* 560 Pa. 51, 72, 742 A.2d 1052, 1063 (1999) (Cappy, J., concurring). When a jury has been charged on only one theory of law, there is no reason to conclude that the jury reached —or would have reached—the same conclusion under a different theory. See *e.g., Hutchison,* 560 Pa. at 74, 742 A.2d at 1064 (Cappy, J., concurring).

The jury in this case was instructed that it could find the article defamatory only if it concluded that the article implied that the indictment accused plaintiff of wrongdoing. The jury was not instructed that it could find the article defamatory if it implied either that plaintiff was involved in the conspiracy or would be charged in the future. There is no basis in the law for upholding a jury verdict based on a legal theory on which it was not instructed.

In conclusion, the trial judge being sensitive to the fact that this case has been in existence since 1987, the subject of two separate appeals to the Superior Court and allocatur having been initially granted and reconsidered, we felt an en banc panel was the fair and prudent way to address an issue that raised in our mind the possibility the uncontested facts/law and inexplicably the cause of action actually pursued by plaintiff were such that the verdict may have been improper.

After careful consideration of the argument held on June 11, 2001, the en banc panel believes a closer review of the two Superior Court opinions and the theory of defamation pursued by the plaintiff in this case is such that "three reasonable minds" have concluded that the verdict is improper and PNI's motion for post-trial relief seeking entry of a judgment n.o.v. shall be granted.

An order has been filed this date consistent with this memorandum.

442

## ORDER

And now, May 29, 2002, defendants' motion for judgment n.o.v. is hereby granted.