ToDAY'S HOUSING, Appellant

v.

TIMES SHAMROCK COMMUNICATIONS, INC., and Times Shamrock Communications, Inc., d/b/a/ Republican & Herald, and Pottsville Republican, Inc., and Pottsville Republican, Inc. d/b/a/ Republican & Herald, Appellee.

Superior Court of Pennsylvania.

Argued Dec. 8, 2010.

Filed May 4, 2011.

James A. Wells, Philadelphia, for appellant.

John T. Hinton, Jr., Scranton, for appellees.

BEFORE: STEVENS, PANELLA, and SHOGAN, JJ.

OPINION BY PANELLA, J.:

In this appeal, we are faced with a claim that a newspaper abused the rights guaranteed to it by our Constitution. Appellant, ToDay's Housing, filed a complaint alleging defamation against Appellees, Times Shamrock Communications, Inc., Times Shamrock Communications, Inc. d/b/a Republican & Herald, Pottsville Republican, Inc., and Pottsville Republican, Inc. d/b/a Republican & Herald and Republican & Harold (collectively, "Newspaper Publishers") arising from five separate articles published by Newspaper Publishers. Subsequently, on December 7, 2009, the Honorable Jeffrey L. Schmehl, in the Court of Common Pleas of Berks County, granted summary judgment and dismissed ToDay's Housing's complaint. After careful review, we conclude that ToDay's Housing failed to adduce evidence of record capable of supporting a conclusion that the articles were false. Accordingly, we affirm.

This defamation action stems from Newspaper Publishers' publication of a series of five newspaper articles in the Pottsville Republican and Herald, from December 17, 2003 through March 5, 2004. The articles were written in response to a large sign posted by Donald and Clara Kerik in their front lawn reading: "Our Dream Home Turned Nightmare Purchased from Today's Housing ... Today's Housing Gives Excuses Instead of Corrections." A reporter employed by Newspaper Publishers proceeded to interview the Keriks to hear their reasons for posting the sign. The reporter also interviewed the General Manager of ToDay's Housing during her investigation.

On December 17, 2003, Newspaper Publishers published the first pertinent article. This article described some of the eleven separate Department of Housing and Urban Development ("HUD") code violations discovered in the Keriks' home. The article noted that the Department of Community and Economic Development ("DCED") had intervened in the dispute and required ToDay's Housing to repair the home by October 8, 2003. However, the article indicated that, according to the Keriks, the repairs were not completed due to ToDay's Housing's unwillingness to act.

The second article, published December 30, 2003, discussed ToDay's Housing's ongoing dispute with another couple, James and Kathy Ferguson. ToDay's Housing sued the Fergusons after the Fergusons had withheld payment of the remaining balance on their modular home. The Fergusons counter-sued, claiming that they had incurred significant repair costs just to make their modular home habitable. The article listed the Ferguson's complaints about the house they bought from ToDay's Housing. Furthermore, the article described the repair estimate the Fergusons

received from James L. Martin, a local contractor. Martin's estimate listed "24 deviances from the home's original plan and projects that needed to be completed." The article also included comments from ToDay's Housing's General Manager and its attorney, as well as briefly mentioning the Keriks' sign.

The third article, published on January 3, 2004, was a shorter article focused on the public attention the Keriks received shortly after posting the sign. The article quotes Clara Kerik that the Keriks had "at least 22 people call [them] and tell [them] how they're in the same boat [with ToDay's Housing]." Furthermore, the article noted that 13 complaints had been filed against ToDay's Housing at the Better Business Bureau in the previous three years. It also indicated that the Keriks acknowledged that ToDay's Housing was performing some repairs on their residence.

The fourth article, published January 6, 2004, focused on ToDay's Housing's response to the controversy. The article indicated that ToDay's Housing had recently hired a new general manager, James Miller. Mr. Miller is quoted as stating "[f]or me to sit here and tell you that in 60 days I know the whole history of this company, I would not be telling you the truth." Miller is also quoted promising "to live and die by the contract" going forward. The article proceeds to detail the process by which the homes sold by ToDay's Housing were assembled. Finally, Miller is quoted proclaiming confidence in the work done by ToDay's Housing.

The fifth and final article, published March 5, 2004, was titled "Home's deficiencies being repaired," with a sub-title of "Deer Lake owners acknowledge progress by retailer and manufacturer." The article quoted Donald Kerik stating that ToDay's Housing had so far "followed through" on its promise to make the neces-

sary repairs. Kerik concluded, "[t]he house is not perfect, but the work is being done. It's not completely finished but we've had progress."

On March 3, 2005, ToDay's Housing filed a complaint against Newspaper Publishers alleging five counts of defamation in relation to each article. ToDay's Housing contended that its reputation was harmed because the articles falsely implied that it was responsible for the design, manufacture, and assembly of the defective modular homes. ToDay's Housing also contended that the articles collectively impugned its customer service and that its business suffered as a result.

The parties subsequently proceeded to discovery. However, following more than two years of inactivity, the trial court issued a notice to terminate the case. ToDay's Housing filed a statement of its intention to proceed, but no further action was taken until Newspaper Publishers filed a motion for summary judgment.

Following a hearing on December 7, 2009, the trial court granted summary judgment and dismissed ToDay's Housing's claims with prejudice. The trial court determined that ToDay's Housing had failed to prove that any statements in the five articles were capable of defamatory meaning, because they either constituted truth or opinion. In sum, the trial court found that "[t]he articles portrayed [Today's Housing] in an accurate and fair manner," and "most certainly could not have risen beyond the level of mere embarrassment or annoyance such that the publications amounted to exposition to public hatred, contempt or ridicule." Trial Court Opinion, 5/17/10, at 12. The trial court later denied ToDay's Housing's motion for reconsideration. This timely appeal followed.

On appeal, Today's Housing presents the following issue for our review:

Are [Newspaper Publishers'] articles capable of defamatory meaning where the articles accused ToDay's Housing, a retailer of modular homes, of causing defects and other problems associated with modular homes it sold when in fact ToDay's Housing did not cause the defects or problems identified in the articles?

Appellant's Brief, at 4.

Preliminarily, we note the applicable scope and standard of review:

> Our standard of review on an appeal from the grant of a motion for summary judgment is well-settled. [We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. *See* Pa.R.C.P., Rule 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Shepard v. Temple University,* 948 A.2d 852, 856 (Pa.Super.2008) (citations omitted).

On appeal, ToDay's Housing argues that the trial court erred in concluding that the pertinent articles were not defamatory. However, we do not reach the issue as we conclude that regardless of whether the articles constitute defamatory statements, ToDay's Housing failed to establish either the falsity of the articles or the presence of actual malice.

 Under the First Amendment to the United States Constitution, a plaintiff asserting defamation concerning a publication of a matter of "public concern" bears the burden of proving that the publication was false. *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 776, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986). If it cannot be conclusively determined whether the publication was true or false, the plaintiff's claim must fail. *See id.,* at 776, 106 S.Ct. 1558. The Supreme Court of the United States feared that any other standard would have a "chilling effect" on the reporting of important public matters. *Id.,* at 777, 106 S.Ct. 1558.

 Initially, we conclude that the dispute between homeowners and ToDay's Housing was a matter of public concern in Berks County. The activities of highly regulated industries are generally deemed matters of public concern. *See Dougherty v. The Boyertown Times,* 377 Pa.Super. 462, 547 A.2d 778, 784 (1988). Housing is a heavily regulated industry, due to the concern for safe and healthy living conditions, as well control of disease and fire hazards. For this reason alone, we would conclude that the pertinent articles were addressing matters of public concern.

But the public nature of this conflict is even more obvious when other circumstances are considered. It is undisputed that ToDay's Housing had filed suit against the Fergusons and that the Fergusons' counter-allegations centered on ToDay's Housing's craftsmanship. ToDay's

Housing's General Manager, James Miller, testified at deposition that the Keriks' sign was "common knowledge." N.T., 6/30/2005, at 192. In fact, ToDay's Housing's attorney sent a letter to the Keriks indicating that their sign was interfering with ToDay's Housing's ability to sell homes. *See* N.T., 6/30/2005, at 165. If the Keriks' sign was sufficiently common knowledge to interfere with ToDay's Housing's sales, the conflict was clearly of a public nature.

■ As such, ToDay's Housing bore the burden of proving the falsity of the challenged publication at trial. For a plaintiff to survive a motion for summary judgment, it must "adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in its favor." *Ertel v. Patriot–News Co.*, 544 Pa. 93, 101–102, 674 A.2d 1038, 1042 (1996), *cert. denied* 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d 401. Accordingly, in order to successfully survive Newspaper Publishers' motion for summary judgment in the case, ToDay's Housing was required to adduce sufficient evidence to allow a jury to find that the articles were false.

■ The record before us on appeal reveals that ToDay's Housing failed to adduce evidence capable of supporting a finding that the articles were false. John Schiavi, part owner of ToDay's Housing, testified at deposition that he has no basis to determine whether the subject newspaper articles were accurate or not. *See* N.T., 11/17/2005, at 72. Theodore Salamak, also part owner of ToDay's Housing, testified that he did not know if any of the HUD code violations assessed against ToDay's Housing had any merit. *See* N.T., 11/21/2005, at 148–149. When pressed to find factual inaccuracies in the newspaper articles, Mr. Salamak identified several statements made by Clara Kerik that he believed were untrue, but when asked if he

believed whether the newspaper fabricated this sentence, he responded "I have no idea if they made it up or not." *Id.,* at 154–155.

In fact our review of Mr. Salamak's deposition revealed numerous instances where he labeled Clara Kerik "a liar." However, when pressed to clarify whether he disputed that Mrs. Kerik had actually made the statements published in the articles, Mr. Salamak would stop short of asserting that the newspapers had falsely reported Mrs. Kerik's statements. Mr. Salamak's testimony accordingly falls short of that required to allow a jury to find that the pertinent articles were false.

James Miller, who was hired by ToDay's Housing in November 2003 to serve as General Manager, testified that he believed that nine of the eleven HUD violations were legitimate. *See* N.T., 6/30/2005, at 52. When asked to identify factual inaccuracies in the pertinent articles, Mr. Miller took issue with the validity of some of the code violations cited by DCED, but did not contest that the citations were in fact issued. *See id.,* at 127. Again, such testimony is insufficient to permit a finding that the pertinent articles were false.

No other evidence in the record is even remotely capable of supporting a finding that the pertinent articles were false. We observe that ToDay's Housing's brief on appeal focuses almost entirely on how the articles "falsely implied" certain facts. In fact, every assertion of falsehood except one is based upon what the articles allegedly implied. The single exception concerns the first article's claim that a door was installed backwards, whereas ToDay's Housing asserts that it was merely the door handle that was backwards. Otherwise, ToDay's Housing's argument rests entirely on drawing implications from statements that it does not argue are materially false.

■ The law does not require perfect truth, so long as any inaccuracies do not render the substance and "gist" of the statements untrue. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516, 517, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991). The "gist" of a statement is true if the effect upon a reader is the same regardless of the inaccuracy. *Id.* We conclude that, even accepting ToDay's Housing's argument about the door handle at face value, this inaccuracy would not have affected the gist of the article or statements in it.

■ It is true that Pennsylvania courts have previously recognized that defamation by innuendo is actionable. *See, e.g. Thomas Merton Center v. Rockwell Int'l Corp.*, 497 Pa. 460, 467, 442 A.2d 213, 217 (1981), *cert. denied* 457 U.S. 1134, 102 S.Ct. 2961, 73 L.Ed.2d 1351. "To establish defamation by innuendo, the innuendo must be warranted, justified and supported by the publication." *Livingston v. Murray*, 417 Pa.Super. 202, 612 A.2d 443, 449 (1992) *appeal denied* 533 Pa. 601, 617 A.2d 1275 (1992). The question of whether innuendo is actionable as defamatory is a question of law. *See Sarkees v. Warner–West Corp.*, 349 Pa. 365, 368–369, 37 A.2d 544, 546. The legal test to be applied is whether the challenged language could "fairly and reasonably be construed" to imply the defamatory meaning alleged by a plaintiff. *Id.*

ToDay's Housing's contentions on appeal focus on an allegation that all five articles, taken as a whole and read in context, falsely imply that ToDay's Housing manufactured the modular homes it sold.

> Because a jury could interpret the articles published by [Newspaper Publishers] as falsely implying that ToDay's Housing manufactured the modular homes it sold, and was the cause of the various problems in the articles, the trial court should have submitted this issue for the jury's determination.

Appellant's Brief, at 14. *See also id.*, at 5 ("falsely implied that ToDay's Housing built the Kerik's home . . ."), 6 ("falsely implied that ToDay's Housing built the home . . ."), 7 ("falsely implied that ToDay's Housing built the home . . ."), 8 ("falsely implied that ToDay's Housing built the Keriks' home . . ."), and 9 ("falsely implied that ToDay's Housing built the Keriks' home . . .").

We conclude that the articles, when taken in context, cannot fairly and reasonably be construed to imply that ToDay's Housing was the manufacturer of the homes. In fact, the fourth article devotes an extensive portion of its narrative to describing the manufacturing process of the homes sold by ToDay's Housing:

> Today's Housing sells homes from three Pennsylvania-based manufacturers: Manorwood, Fleetwood and Champion Homes.
>
> Customers can view model homes and select from an array of options. The homes start out at a base price and the options can increase that price accordingly, [Miller] said.
>
> Miller said that Today's Housing works with dozens of subcontractors for a variety of different jobs.
>
> "Most all retailers use certified setup crews to install the houses," he said. "We may have four setup crews that we work with."
>
> . . .
>
> Although Today's Housing does not build the homes, it is responsible for the manufacturer's warranty.

Plaintiff's Exhibit "D".

A fair reading of the five articles implies precisely what is contained in the last sentence quoted from the fourth article, above. The articles fairly implied that To-

1216

Day's Housing was responsible for honoring the manufacturer's warranty. The text of the articles does not imply that ToDay's housing was the manufacturer; in fact, as demonstrated above, the fourth article explicitly refuted any such implication.

In conclusion, the trial court correctly determined that ToDay's Housing failed to adduce sufficient evidence to allow a jury to find that the pertinent articles were false. ToDay's Housing failed to meet its burden of producing evidence sufficient, if believed, to establish the falsity of the newspaper articles or any reasonable implications arising from them. Furthermore, we conclude that ToDay's Housing's contention that the articles constituted defamation by innuendo fails as a matter of law. Thus, the grant of summary judgment was proper.

Order affirmed. Jurisdiction relinquished.