**F. Earl REED, III, Appellant,**

v.

**Tonette PRAY, Martha Van Auken, Arthur Van Auken, Julius Coles and Borough of Colwyn.**

Commonwealth Court of Pennsylvania.

Argued May 15, 2012.
Decided Aug. 22, 2012.
Reargument Denied Oct. 17, 2012.

---

John P. McKelligott, Newtown Square, for appellant.

Mark A. Raith and John N. Hickey, Media, for appellees.

BEFORE: SIMPSON, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.[1]

Appellant F. Earl Reed, III (Reed), appeals from the May 12, 2011, and June 28, 2011, orders of the Court of Common Pleas of Delaware County (trial court). In those orders, the trial court entered summary judgment in favor of Appellees Tonette Pray (Pray), Martha Van Auken, Arthur Van Auken, Julius Coles (Coles) (collectively, Individual Appellees), and the Borough of Colwyn (Borough). The trial court dismissed Reed's complaint against Individual Appellees and the Borough with prejudice and denied Reed's motion for leave to amend his complaint. We affirm in part, reverse in part, and remand the matter for further proceedings.

## BACKGROUND

Reed is a former member of the Borough Council. In 2006, as chair of the Borough's finance committee and a member of the Colwyn Fire Company, Reed spearheaded the Fire Company's effort to purchase a new fire truck for $262,000. The Fire Company had successfully raised a portion of the purchase price, but a $115,000 shortfall remained. To cover the shortfall, Reed requested a $15,000 advance from the Borough, which the Borough Council later approved. As to the balance of the shortfall, Reed championed the idea of securing a $100,000 advance from the Borough's sewer fund, which in turn would be loaned to the Fire Company to finance the balance of the shortfall. On August 23, 2006, Reed called an emergency Borough Council meeting to approve the loan. It is undisputed that the Fire Company eventually received a $100,000 loan from the sewer fund.

Pray and Martha Van Auken were also members of the Borough Council. From the time of the idea's inception, Pray and Van Auken were opposed to the sewer fund loan, even questioning its legality. In October 2006, Pray brought her concerns over the legality of the loan to the attention of the Colwyn Police Department, which referred the matter to the Delaware County District Attorney's Office. No formal charges were ever filed. This, however, was not the end of the matter.

The loan became a hot button in local politics, pitting Pray, Martha Van Auken, and Coles (also on Borough Council), against Reed and his supporters. In the context of the debate, Reed claims that, at certain polling places on Election Day in November 2008, Martha Van Auken and Coles stated in the presence of numerous voters and other persons that "Earl Reed took $100,000 from Colwyn," referring to the above-referenced loan to the Fire Company. Reed also alleges that, months later, Arthur Van Auken (Martha's spouse) shouted out at a local Home Depot store that "Earl Reed took $200,000 from Colwyn," referring again the purchase of the fire truck.

Based on the above allegations, Reed filed his Complaint on July 31, 2009, asserting a common law defamation claim against Pray, for reporting her concerns to the Colwyn Police Department, and Martha and Arthur Van Auken and Coles for their public statements that Reed "took" money from the Borough and seeking, in-

---

1. This matter was reassigned to the authoring judge on July 30, 2012.

*ter alia,* punitive damages. With regard to the Borough, Reed alleged that the Borough improperly released to the media a confidential document about the 2006 criminal investigation of Reed titled "Colwyn Police Investigation Time Line" (Timeline).

In November 2010, Pray, Martha Van Auken, Coles, and the Borough filed a motion for summary judgment. Reed requested additional time to conduct discovery and to respond to the motion, which the trial court granted. On February 28, 2011, the trial court heard oral argument on the motion. Thereafter, Reed filed a motion to amend his complaint. On May 12, 2011, in separate orders, the trial court granted the motion for summary judgment and denied Reed's motion to amend his complaint. Arthur Van Auken filed a separate motion for summary judgment, which the trial court granted on June 28, 2011. Reed filed a timely appeal, challenging the trial court's dismissal of his complaint on summary judgment and denial of his request to file an amended pleading.

In an opinion filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(1), the trial court detailed its reasoning behind the orders on appeal. With respect to the statements that Reed "took" $100,000 or $200,000 from the Borough, the trial court found that such statements were not defamatory as a matter of law. The trial court reasoned:

> [I]t is inconceivable how any reasonable person could consider such statements made by the individual Appellees to be slanderous. The statements do not suggest criminal conduct on the part of Mr. Reed, nor do the statements suggest that Mr. Reed personally benefited from taking a sum of money from the Borough. Moreover, the statements concerned a hot-button political issue within the Borough at a time when the individ-

ual Appellees were campaigning against Mr. Reed's political party. True, the statements may have been made to lower Mr. Reed's status and deter third persons from associating with him *in the political arena,* but absolutely nothing about those statements suggest that any average person would conclude from those statements that Appellees were attempting to lower Mr. Reed's status and deter third persons from associating with him *personally.* If anything, these statements can be considered a statement of opinion regarding Mr. Reed and his political party's handling of Borough affairs while in elected office, which of course does not constitute slander.

(Opinion, 8/11/2011, at 6 (emphasis in original).)

With respect to Pray, the trial court held that Pray cannot be held liable for defamation where, in the context of her official capacity as a member of Borough Council, she expressed her concern over the legality of the loan to the Fire Company to local law enforcement authorities. With respect to Reed's claim that the Borough inappropriately released documents related to its criminal investigation of the loan to local media, the trial court noted an absence of any admissible evidence that the Borough did so. Even if the Borough had released the documents, the trial court held that the police record of its investigation of Reed and the loan was not Reed's personal property and that Reed, therefore, could not maintain a cause of action to challenge its release. The trial court also dismissed Reed's claim for punitive damages because it found that Reed failed to maintain a cause of action for defamation.

With respect to the motion to amend, the trial court noted that Reed sought to amend his Complaint by attaching two documents. (Reproduced Record (R.R.)

# 15.)[2] These two documents appear to be political campaign circulars. The first is a letter from Richard Booker, then a candidate for mayor. There is a notation at the bottom of the letter: "Paid for by the Colwyn Democratic Party." The letter includes claims to the effect that the loan of monies to the Fire Company to purchase the fire truck was improper, as it occurred without an authorized vote of Borough Council. Reed's name does not appear in this document. The second document appears to be a political flyer of some type, but there is nothing in the document directly attributing it to a particular source or author. Nonetheless, the tone of the piece is very partisan, criticizing the "Republican Party" of engaging in a "shell game." The document does reference Reed by name, suggesting he was behind the "shell game."

In its opinion, the trial court defended its decision to deny the motion to amend. It noted that based on its review of the proposed Amended Complaint, Reed offered nothing that would link the Individual Appellees to either document. He also noted that there was no evidence adduced during discovery that would prove any of the Individual Defendants were involved in the publication of either document. Indeed, the trial court said the evidence showed the opposite. In the absence of such evidence, the trial court noted that amendment would merely postpone his ruling favorably on the Individual Appellee's summary judgment motions.

On appeal, Reed claims that the trial court erred in granting summary judgment on his defamation claims. Reed maintains that there are genuine issues of material fact that precluded summary judgment on the defamation claims. In addition, he contends that the trial court erred when it concluded that the statements in question were not capable of a defamatory meaning. Reed also claims that the trial court erred in denying his motion to amend. He further alleges that the trial court erred in failing to recognize his property claim to the criminal investigative record. Finally, he challenges the impartiality of the trial court, based on certain language found in the trial court's opinion. If this Court remands, Reed asks that we remand with direction that the matter be reassigned to a different trial judge or to a different County.

## DISCUSSION

### A. Summary Judgment[3]

#### 1. *Defamation*

A plaintiff pursuing a common law claim for defamation must prove the following:

**2.** We note that Reed has submitted to the Court a two-volume Reproduced Record, each of which is approximately two inches thick. Though the contents of the Reproduced Record are separated by numbered tabs (29 of them), Reed's counsel did not separately number each page of the Reproduced Record as required under Pa. R.A.P. 2173. We admonish Reed's counsel to acquaint himself with and abide by the rules governing filings with this Court in future filings.

**3.** "The scope of this Court's review of a grant or denial of summary judgment is limited to determining whether the trial court committed an error of law or an abuse of discretion." *Kaplan v. Se. Pa. Transp. Auth.*, 688 A.2d 736, 738 n. 2 (Pa.Cmwlth.1997). "Summary judgment is appropriate only when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Guy M. Cooper, Inc. v. E. Penn Sch. Dist.*, 903 A.2d 608, 613 (Pa.Cmwlth.2006). The appellate standard of review is de novo when a reviewing court considers questions of law. *Weaver v. Lancaster Newspapers, Inc.*, 592 Pa. 458, 465, 926 A.2d 899, 903 (2007). In reviewing questions of law, the scope of review

(1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion.

*Balletta v. Spadoni,* 47 A.3d 183 (Pa. Cmwlth.2012). As a threshold matter, it is up to the trial court to determine whether the statement in question is "capable of" a defamatory meaning. If the trial court determines that it is not capable of a defamatory meaning, it should dismiss the suit. *MacElree v. Phila. Newspapers, Inc.,* 544 Pa. 117, 124, 674 A.2d 1050, 1053 (1996).

■■■ "A communication is considered defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Balletta,* 47 A.3d at 197. As our Supreme Court has noted: "It is not enough that the victim ... be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society." *Tucker v. Phila. Daily News,* 577 Pa. 598, 616, 848 A.2d 113, 124 (2004). In addition, an opinion, without more, is not actionable. *Baker v. Lafayette Coll.,* 516 Pa. 291, 297, 532 A.2d 399, 402 (1987).

■ We must also be sure to examine the challenged statement in context. *See id.* at 296, 532 A.2d at 402. Standing alone, certain words may reasonably be understood as defamatory. But the context may provide an explanation that would render such an interpretation unrea-

is plenary, as the reviewing court may exam-

sonable. *Balletta,* 47 A.3d at 197–98; *see Thomas Merton Ctr. v. Rockwell Int'l Corp.,* 497 Pa. 460, 465, 442 A.2d 213, 216 (1981).

■ We will start our analysis with Reed's defamation claim against Pray. That claim, according to the Complaint, is based on discussions Pray had with law enforcement officials in the Colwyn Police Department in October 2006. (Compl. ¶¶ 17–18 & Ex. "A" (R.R. # 2).) With respect to those discussions, the Timeline, which is attached to the Complaint and on which Reed relies, provides the following, in relevant part:

[ ] October 12th 2006, Thursday, I was approached by councilwoman TONETTE PRAY after the borough council caucus meeting. PRAY inquires about REED ... using borough funds to purchase the fire company's new fire truck. PRAY *expresses concern* and states she *feels* REED ... [is] involved in illegal activity somehow. I set up a meeting with PRAY to discuss her concerns....

...

[ ] October 22nd 2006, Sunday, I met with councilwoman PRAY who again expressed her and councilwoman VAN AUKEN's *concern* about REED ... now taking control of borough council, when there were still issues about them misusing borough funds for a new fire truck without legal advise (sic) or letting the rest of borough council know what their intentions were. Councilwoman PRAY and VAN AUKEN were not aware of the $100,000 given to the fire company out of borough funds. I did inform PRAY of the situation. PRAY inquired if there was going to be a formal police investigation into the matter. I advised council woman PRAY that I

ine the entire contents of the record. *Id.*

had been investigating the matter for the last couple of weeks and that I would keep her informed of my progress.

(Compl. Ex. "A" (emphasis added).) We agree with the trial court that Pray's statements and inquiries to law enforcement in Colwyn Borough about what she perceived to be an illegal or improper use of Borough funds are not capable of a defamatory meaning. At most, her statements, recounted above, amount to mere opinion— "concerns" and "beliefs." Moreover, the statements appear to be privileged, given Reed's official capacity as an elected member of Borough Council. "A conditional privilege arises when a recognized interest of the public is involved. Communications which are made on a proper occasion, from a proper motive, in a proper manner, and which are based on reasonable cause are privileged." *Moore v. Cobb–Nettleton*, 889 A.2d 1262, 1268 (Pa.Super.2005). It appears from Reed's own pleading that Pray reasonably and appropriately expressed her concerns about the propriety of Borough action to law enforcement officials. Thus, her statements were privileged. *See Pawlowski v. Smorto*, 403 Pa.Super. 71, 588 A.2d 36, 42–43 (1991) (holding statements by private party made to law enforcement officials for purpose of inducing criminal proceeding are privileged). Therefore, the trial court properly entered summary judgment in Pray's favor on Reed's defamation and punitive damages claim against her.

■ We now turn the statements that Martha Van Auken and Coles allegedly made at polling places on Election Day in November 2008. The trial court found that the statements that Reed "took $100,000" from the Borough are not capable of a defamatory meaning. We disagree. Again, the question before this Court is not whether we believe this statement was defamatory. Our inquiry is limited solely to the question of whether the statement is "not capable" of a defamatory meaning. If it is not capable, then dismissal would be appropriate. We, however, cannot say that a claim that an elected official "took" money is incapable of a defamatory meaning.

In *MacElree v. Philadelphia Newspapers, Inc.*, 544 Pa. 117, 674 A.2d 1050 (1996), the Court addressed the legal validity of a claim by a former district attorney for defamation, relating to an article that accused him of being "the David Duke of Chester County running for office by attacking Lincoln." *MacElree*, 544 Pa. at 120, 674 A.2d at 1052. The district attorney sued the newspaper for defamation. The trial court granted preliminary objections in the nature of a demurrer, finding, *inter alia*, that the statement was merely one of opinion and could not be reasonably construed to be defamatory. Rather, it amounted to nothing more than name calling and opinion. The Superior Court affirmed.

On appeal, the Supreme Court rejected the trial court's and Superior Court's analysis. The Supreme Court first rejected the Superior Court's characterization of the alleged statement as "merely labeling appellant a racist":

> In reading the charge that appellant was electioneering and was the David Duke of Chester County, a reasonable person could conclude that this was an accusation that appellant was abusing his power as the district attorney, an elected official, to further racism and his own political aspirations. Such an accusation amounts to a charge of misconduct in office, as appellant alleges in his complaint.

*MacElree*, 544 Pa. at 125, 674 A.2d at 1054. The Supreme Court cited with approval the decision of the United States Court of Appeals for the Third Circuit in *Sweeney*

*v. Philadelphia Record Co.*, 126 F.2d 53, 54 (3d Cir.1942), for the proposition that such charges of misconduct or criminality in office constitute libel *per se*.

The question before the trial court was not whether the statement was capable of an innocuous meaning; rather, the question was whether a statement that a local elected official "took $100,000" from the Borough is capable of a defamatory meaning. We believe that this statement, allegedly made at a polling place in an effort to influence the outcome of an election and directed at a public official, could reasonably be understood as a charge of misconduct in office and not merely an opinion of character. There does not appear before us any bookends to this charge, which would provide a context to suggest that the statement could *not* be reasonably construed as defamatory.[4] Sadly, our criminal justice system in Pennsylvania has yielded several recent and high-profile convictions of former elected officials for "taking" public funds.

■■■■ Martha Van Auken and Coles argue, without conceding that they made the

alleged statement, that their criticism of Reed's term in office is not actionable because they were cloaked with high public official immunity. *See Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194 (1996). Such immunity, however, only applies to shield public officials for defamatory statements made in the course of an official's public duties. *Id.* at 490–91, 677 A.2d at 1195–96. Here, it is alleged that Martha Van Auken and Coles made the alleged defamatory statements at a polling place on Election Day. Because it is not clear to us that at that time and in that setting Martha Van Auken and Coles were acting in their capacities as elected government officials, we reject their request that we affirm the trial court's decision on this alternative ground.[5]

■■■■ As for Arthur Van Auken, Reed alleges that he made a similar statement about Reed taking public monies at a local retail establishment in April 2009. For the reasons set forth above, then, we conclude that the statement is capable of a defamatory meaning and, therefore, the case should have gone to a jury.[6]

4. For example, if the charge was part and parcel of a larger dissertation on the dispute over the status of the Borough's sewer funds and disagreement over steps that Borough Council, at the behest of Reed, took to loan funds to the Fire Company to acquire a new fire truck, we might reach a different conclusion. It is contended here, however, that the charge was made without elaboration or explanation. In *Balletta*, by contrast, the alleged defamatory statements appeared in a newspaper article. This Court, therefore, viewed the statements "in context of the article in its entirety" and ultimately concluded that the *statements were non-actionable statements of opinion. Balletta*, 47 A.3d at 199.

5. In addition, we reject the alternative argument that we should affirm the trial court's dismissal of the defamation claims because the alleged *statements amounted to nothing* more than a criticism of Reed's term in office and thus constitutionally protected speech.

As noted above, the statement that Reed "took" public monies while in office could reasonably be construed as an allegation of misconduct in office and not a mere criticism of Reed's decision to advocate for the local Fire Company while in office and to secure a loan, through vote of Borough Council, to purchase a new fire truck. Such allegations of misconduct in office, which are different in degree than mere criticisms of decisions made in office, are actionable. *See MacElree.* Even public figures may bring actions for defamation. If, however, the matter in question involves an issue of public concern, the plaintiff public figure must prove that the defendant made the false statement with actual malice. *See American Future Sys. Inc. v. Better Bus. Bureau of Pa.*, 592 Pa. 66, 923 A.2d 389 (2007).

6. Arthur Van Auken's brief on appeal includes only one and one-half pages of argument. Most of the argument is devoted to the issue

### 2. Negligent Care of Personal Property

■ Reed argues that the trial court erred in granting summary judgment in the Borough's favor on his claim under Section 8542(b)(2) of the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8542(b)(2), for negligent care, custody, or control of personal property.[7] The "personal property" that Reed claims was negligently handled is the Timeline. This document was prepared by the Borough Police Department in the course of its official investigation of the sewer fund loan. According to Reed, the Borough improperly produced the Timeline to the media pursuant to a Right–to–Know–Law[8] request. As the trial court correctly concluded, the Timeline was not *Reed's* personal property; it was the property of the Police Department. Reed's Complaint also fails to allege any property loss as a result of the Borough's alleged negligent care of the Timeline. *See Kearney v. City of Philadelphia*, 150 Pa.Cmwlth. 517, 616 A.2d 72, 75 (1992) (noting that individual must have sustained property loss resulting from municipality's care, custody or control of personal property).

Furthermore, Reed proffered no evidence to support his allegation that the Borough released the Timeline to the media. His claim is based on an alleged hearsay statement by a member of a local news outlet. Reed never sought to depose any members of the media, even though he referred to specific individuals in his complaint. Accordingly, the trial court properly granted summary judgment in the Borough Appellees' favor on this claim.

### B. Motion to Amend

■ Reed asserts that the trial court abused its discretion in denying his motion to amend his Complaint to allege additional acts of defamation in the form of two documents: (1) a purported letter from a mayoral candidate, who is not a defendant in this action; and (2) a political pamphlet of some type.

■ Leave to amend is within the sound discretion of the trial court. *Feldman v. Lafayette Green Condo. Ass'n*, 806 A.2d 497, 500 (Pa.Cmwlth.2002). As noted above, in its Opinion the trial court defended its decision to deny the motion to amend. It noted that based on its review of the proposed Amended Complaint, Reed offered nothing that would link the Individual Appellees to either document. He also noted that there was no evidence adduced during discovery that would prove any of the Individual Defendants were involved in the publication of either document. Indeed, the trial court said the evidence showed the opposite. "[A]n

---

of whether the statement is capable of a defamatory meaning. In the last paragraph of his argument section, Arthur Van Auken attempts to identify two additional issues. First, he questions whether a statement that the recipient does not believe can be actionable. Second, he questions whether Reed has any compensable damages. Arthur Van Auken, however, fails to include in his brief any meaningful argument on these two questions or citations to authority. Accordingly, we will not address them. *See* Pa. R.A.P. 2119(a); *In re Estate of Ryerss*, 987 A.2d 1231, 1236 n. 7 (Pa.Cmwlth.2009) (addressing need to adequately preserve issues for appellate review by developing them in brief).

7. The following act by a local agency may result in the imposition of liability:

The care, custody or control of personal property of others in the possession or control of the local agency. The only losses for which damages shall be recoverable under this paragraph are those *property losses suffered with respect to the personal property in the possession or control of the local agency.* 42 Pa.C.S. § 8542(b)(2) (emphasis added).

8. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–.3104.

amendment is properly refused where it appears amendment is futile." *Weaver v. Franklin Cnty.*, 918 A.2d 194, 203 (Pa. Cmwlth.2007). We find no abuse of discretion.

### C. Bias

Finally, Reed points to the trial court's Opinion and argues that the words and tone suggest a trial court and judge that are biased against him. We disagree. Instead, upon reviewing the record of the proceedings as a whole, we see a trial court that provided Reed a full and fair opportunity to litigate this matter. We have no reason to believe that the trial court will be any less fair or less impartial on remand.

### CONCLUSION

Accordingly, we affirm the trial court's May 12, 2011 Order, denying Reed's Motion for Leave to File an Amended Complaint. We affirm the trial court's May 12, 2011 Order, dismissing all claims against Appellees Tonette Pray and the Borough with prejudice. We reverse, however, the portion of the trial Court's May 12, 2011 Order, dismissing the claims against Appellees Martha Van Auken and Julius Coles. We also reverse the trial court's June 28, 2011 Order, dismissing the claims against Appellee Arthur Van Auken. We remand this matter to the trial court for further proceedings consistent with this opinion.

### ORDER

AND NOW, this 22nd day of August, 2012, we hereby AFFIRM the May 12, 2011 Order of the Court of Common Pleas of Delaware County (trial court), denying Appellant F. Earl Reed's Motion for Leave to File an Amended Complaint, and the May 12, 2011 Order of the trial court, dismissing with prejudice the claims

against Tonette Pray and the Borough of Colwyn.

The trial court's May 12, 2011 and June 28, 2011 Orders, dismissing with prejudice the claims against Martha Van Auken, Arthur Van Auken, and Julius Coles are hereby REVERSED and this matter is REMANDED for further proceedings.

Jurisdiction relinquished.

### CONCURRING AND DISSENTING OPINION BY Senior Judge FRIEDMAN.

I respectfully concur in part and dissent in part. Specifically, I disagree with the majority's decision to reverse the entry of summary judgment in favor of Martha Van Auken, Julius Coles, and Arthur Van Auken. Because I conclude that F. Earl Reed, III, failed to produce sufficient evidence to establish a *prima facie* claim of defamation against these appellees, I would affirm the trial court's orders in their entirety.

In evaluating Reed's defamation claims, the majority focuses entirely on the allegations in the complaint as opposed to the evidence adduced during discovery. When faced with a summary judgment motion, however, " '[t]he non-moving party ... may not rest on [the] averments in [his] pleadings.' " *Davis v. Resources for Human Development, Inc.*, 770 A.2d 353, 357 (Pa.Super.2001) (citation omitted); *see also ToDay's Housing v. Times Shamrock Communications, Inc.*, 21 A.3d 1209, 1213 (Pa.Super.2011) (" 'Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings ... to survive summary judgment.' ") (citation omitted). Rather, the non-moving party "must 'adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in [his] favor.' " *ToDay's Housing*, 21 A.3d at 1214 (citation omitted). In my view, the

evidence in this case does not come close to satisfying Reed's burden of proving defamation.[1]

First, Reed alleges that Martha Van Auken told voters at the polls on Election Day 2008 that Reed "took $100,000 from Colwyn," referring to the purchase of the fire truck. The majority concludes that this statement, in and of itself, is capable of a defamatory meaning and reverses the entry of summary judgment on that basis. While the defamatory nature of the communication is a threshold matter, as the majority recognizes, that is not the end of the inquiry. We must determine whether the plaintiff can satisfy his burden of proving all seven elements of a defamation claim, including, *inter alia*, "[t]he understanding by the recipient of [the statement's] defamatory meaning." Section 8343(a) of the Judicial Code, 42 Pa.C.S. § 8343(a).

Here, Reed's only evidence to support his claim against Martha Van Auken is his own testimony that his mother told him that she heard Martha Van Auken making the allegedly defamatory statement to voters at a polling location. (Reed Dep.,

4/6/10, at 124–25.)[2] Critically, Reed's mother was never deposed, nor did Reed offer any sworn statement from his mother regarding what she actually heard Martha Van Auken say to voters or to whom such statements were made. Moreover, Reed's counsel never asked Martha Van Auken about this subject at her deposition; her testimony is devoid of any discussion about her statements to voters on Election Day 2008.

Even more significant, the *only* person Reed identified as a possible recipient of Martha Van Auken's allegedly defamatory statement was Paul Meuser. (Reed Dep., 4/6/10, at 124.) However, the record shows that Meuser was a fellow member of the Borough Council who, like Reed, voted to approve the sewer fund loan and who seconded the motion to ratify the loan at the November 2006 Borough Council meeting. (*Id.*, Ex. Reed–1.) Under these circumstances, Reed cannot possibly prove that Meuser could have construed Martha Van Auken's statement as defamatory. Therefore, absent any competent evidence to support Reed's allegations against Martha Van Auken, I do not believe this claim can survive summary judgment.

---

1. For this reason, I believe the majority's extensive reliance on *MacElree v. Philadelphia Newspapers, Inc.*, 544 Pa. 117, 674 A.2d 1050 (1996), is misplaced. In *MacElree*, the Supreme Court concluded that the dismissal of a defamation claim was improper where the statement at issue could have been construed as an accusation of misconduct in public office, which is a criminal offense. However, *MacElree* involved dismissal at the preliminary objection stage, not the summary judgment stage. The Court noted several times that, at that stage of the proceedings, it was bound to accept as true the allegations in the complaint. Applying that standard of review, the Court held that it could not determine, as a matter of law, that the statement at issue was incapable of a defamatory meaning. *Id.* at 125–27, 674 A.2d at 1054–55. Here, however, we are not bound by the allegations in the complaint and must review the entire

record, including the parties' deposition testimony, to determine whether Reed can satisfy his burden of proving defamation.

2. Reed testified as follows:

   A. Martha Van Auken, she was handing out political literature. From my understanding from what my mother told me, as she was handing out the political literature, she was turning around. [Martha Van Auken] says, You've got to vote for the Democrats. The Republicans took 100,000 dollars for the fire truck and they're bankrupting the Borough of Colwyn and the money was never repaid.
   Q. Specifically, [did she make] the statement that Earl Reed took 100,000 from Colwyn?
   A. That's correct. She was also stating that, according to my mother.
   (Reed Dep., 4/6/10, at 125.)

Likewise, Reed alleges that Julius Coles told voters at the polls that Reed "took $100,000 from Colwyn," referring to the purchase of the fire truck. At his deposition, Reed testified that he heard Coles making this statement to unidentified voters as they entered a polling location. (Reed Dep., 4/6/10, at 126–28.) However, Reed produced no evidence establishing that Coles' alleged statement was actually heard and understood to be defamatory by someone other than Reed himself. Contrary to Reed's allegations, Coles testified at his deposition that, in speaking to voters at the polls, he never mentioned Reed by name and any statements he made about the sewer fund loan referred only to the prior administration. (Coles Dep., 1/5/11, at 31–32.)

Furthermore, the evidence established that the issue of the sewer fund loan and the political controversy surrounding it were well known within the community, having been published in numerous news articles in the months leading up to the 2008 election. (*See, e.g.,* A. Van Auken's Motion for Summary Judgment, Exs. B–C.) As the trial court noted, "the [alleged] statements concerned a hot-button political issue within the Borough at a time when the individual Appellees were campaigning against Mr. Reed's political party." (Trial Ct. Op., 8/11/11, at 6.) Even assuming that Reed could prove that Coles made the alleged defamatory statement to third parties, the statement was about a matter of public concern made in the context of a political campaign. *See, e.g., Satterfield v. Borough of Schuylkill Haven,* 12 F.Supp.2d 423, 443 (E.D.Pa.1998) (statements regarding the plaintiff's job performance in public office made while he was a candidate for another public office involved issues of public concern and, thus, were not defamatory). Given the publicity concerning the loan controversy within the Borough, which Reed does not dispute, as well as the time and location at which the statement was allegedly made, I agree with the trial court that the statement could not be construed as defamatory.

Finally, Reed alleges that Arthur Van Auken told Ramona and Fred Lesher at Home Depot that Reed took $200,000 from the sewer fund to purchase a new fire truck. Reed's own testimony established that he called the emergency Borough Council meeting to approve the loan from the sewer fund to buy the fire truck. (Reed Dep., 4/6/10, at 92–96; *see* Compl. ¶¶ 14–15.) It is well settled that truth is a defense to a defamation claim. *See* Section 8343(b) of the Judicial Code, 42 Pa. C.S. § 8343(b). Furthermore, the evidence showed that Ramona Lesher did not even hear the statement, and Fred Lesher did not understand the statement to be defamatory. Thus, I believe Reed's claim against Arthur Van Auken fails.

After two years of discovery, Reed simply failed to produce enough evidence to establish a *prima facie* defamation claim against Martha Van Auken, Coles, or Arthur Van Auken. Accordingly, I conclude that summary judgment was properly entered in their favor and would affirm the trial court's orders in their entirety.